

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 4, 2026**

IN THE UNITED STATES BANK[...]
FOR THE NORTHERN DISTR[...]
FT. WORTH DIVIS[...]

**United States Bankruptcy Judge**

_____

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BOBBY ROY BOOKER III AND | § | CASE NO. 25-43057-MXM-7 |
| VICTORIA ELIZABETH BOOKER, | § | |
| | § | |
| DEBTORS. | § | CHAPTER 7 |
| | § | |
| | § | |
| APPLEPIE CAPITAL INC. AS SERVICING AGENT | § | |
| FOR SERVICER OF U.S. FRANCHISE TRUST I, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | ADV. PROC. NO. 25-04148-MXM |
| | § | |
| BOBBY ROY BOOKER III AND | § | |
| VICTORIA ELIZABETH BOOKER, | § | |
| | § | |
| DEFENDANTS. | § | |

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

*[Relates to Adv. ECF No. 1]*

The Court conducted a trial on the Complaint[1] filed by ApplePie Capital[2] seeking a determination that Defendants'[3] debts to Plaintiff are nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (B).

---

[1] *Complaint Objecting to Dischargeability of Debt of ApplePie*, Adv. ECF No. 1 (the "***Complaint***").

[2] ApplePie Capital Inc. ("***ApplePie***") as Servicing Agent for and Servicer of U.S. Franchise Trust I (the "***Lender***") (together, the "***Plaintiff***" or "***ApplePie Capital***").

[3] Bobby Roy Booker III and Victoria Elizabeth Booker (individually, "***Mr. Booker***" and "***Mrs. Booker***" together, the "***Bookers***" or "***Defendants***").

The Court carefully reviewed and considered the pleadings and briefings filed in this adversary proceeding,[4] testimony of witnesses, exhibits admitted into evidence,[5] and arguments of counsel. This Findings of Fact and Conclusions of Law constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.[6]

As detailed below, the Court finds and concludes Plaintiff ApplePie Capital satisfied—by a preponderance of the evidence—its burden of proof to establish that its claims against the Bookers should be declared nondischargeable under § 523.

## I.    JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the standing order of reference in this district. This adversary proceeding constitutes a core proceeding over which the Court has statutory and constitutional authority to enter a final order and judgment pursuant to 28 U.S.C. § 157(b)(2)(A), (I), and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    FINDINGS OF FACT

The Bookers owned and managed fast-food restaurants, including a Bojangles restaurant in North Carolina and several Jack in the Box restaurants in Texas. In 2023, the Bookers decided to become a franchisee of the Bonchon Korean Fried Chicken restaurant franchise. After opening

---

[4] The Complaint; *First Response to Complaint to Determine Dischargeability of a Debt Pursuant to 11 U.S.C. 523 (a)(2)(A), 523(a)(2)(B)*, Adv. ECF No. 9 (the "**Answer**"); *Defendants' Trial Brief*, Adv. ECF No. 19 (the "**Defendants' Brief**"); *Plaintiff's Post-Trial Brief in support of Plaintiff's Objection to Dischargeability of Debt of ApplePie*, Adv. ECF No. 24 (the "**Plaintiff's Post-Trial Brief**"); *Defendants' Response to Plaintiff's Post-Trial Brief Regarding Victoria Booker*, Adv. ECF No. 25 (the "**Defendants' Post-Trial Brief**").

[5] Adv. ECF No. 23.

[6] Any findings of fact that should more appropriately be characterized as a conclusion of law should be regarded as such, and *vice versa*.

their first Bonchon restaurant, they decided to develop and open two more Bonchon restaurants, which are the subject of this adversary proceeding.

To finance the development and opening of the additional Bonchon restaurants, the Bookers formed Nahla Investments LLC ("*Nahla*") and ZKB Investments LLC ("*ZKB*").  The Bookers also approached ApplePie Capital to obtain the necessary financing for the proposed Nahla and ZBK Bonchon restaurants, as ApplePie Capital had provided the loan for their initial Bonchon restaurant.

**A.     The Nahla Loan**

On May 29, 2024, ApplePie Capital and Nahla entered into a *Loan Agreement*[7] for a $480,000 loan to Nahla (the "*Nahla Loan*") for the acquisition and development of a Bonchon Korean Fried Chicken restaurant to be located at 300 E. Front St, Suite B-130 Arlington, TX 76011.[8] To induce ApplePie Capital to approve and fund the Nahla Loan, the Bookers made certain material representations to ApplePie Capital and provided ApplePie Capital with documents in support of their loan application including, but not limited to:

- The Bookers each executed and delivered to ApplePie Capital a *Personal Guaranty*[9] whereby they guaranteed the payment and performance obligations of the Loan Agreement and all existing and future indebtedness of Nahla to ApplePie Capital;

- The Bookers represented to ApplePie Capital that Mr. Booker was the purported 100% owner and Chief Executive Officer of an entity named Green Haul

---

[7] P. Ex. 7.
[8] *Id*. at pg. 64 of 72.
[9] P. Ex. 8.

Logistics, a transportation logistics company that allegedly served federal government contracts;

- The Bookers delivered to ApplePie Capital an alleged 2023 W-2 Statement[10] representing that Green Haul Logistics had paid Mr. Booker $335,876.40 in 2023;

- The Bookers delivered to ApplePie Capital an alleged July 2024 payroll stub[11] representing that Green Haul Logistic was still paying Mr. Booker a monthly salary of approximately $28,000 in 2024;

- The Bookers represented to ApplePie Capital that Mr. Booker was in the process of selling his 100% interest in Green Haul Logistics and delivered to ApplePie Capital an alleged *Letter of Intent to Purchase Business*[12] purportedly from an entity called National Freight Logistics LLC and an alleged *Memorandum for Purchase Agreement Approval*[13] purportedly from the United States Department of Defense, as evidence of the alleged sale transaction of the Green Haul Logistics company for $5,999,999.00;

- the Bookers delivered to ApplePie Capital their Joint Personal Financial Statement[14] dated April 23, 2024, reflecting, in part, the following representations:

| Checking, Cash and Savings Accounts | $587,402.00 |
|---|---|
| Market Securities | $316,500.00 |

---

[10] P. Ex. 1.
[11] P. Ex. 9.
[12] P. Ex. 2.
[13] P. Ex. 3.
[14] P. Ex. 6.

| | |
|---|---|
| **Real Estate** | $401,392.00 |
| **Business Assets** | $600,000.00 |
| **Retirement Accounts** | $108,328.00 |
| **Funds Spent on Financing Request** | $105,672.00 |
| **Total Assets** | $2,119,294.00 |
| **Net Worth** | $1,754,290.00 |

The credible and uncontroverted testimony of (i) Ms. Nina Maystrovich—a Senior Underwriter of ApplePie Capital since 2017, and (ii) Mr. Jon Kilpatrick—a Senior Relationship Partner with ApplePie Capital since 2018, established that ApplePie Capital reasonably relied on the accuracy of the above representations made by the Bookers and the authenticity of the above documents delivered to ApplePie Capital in support of the Nahla loan application.

Ms. Maystrovich testified that ApplePie Capital follows a thorough underwriting process. Its sales team receives loan applications, and she reviews the supporting documents before approving or denying each request. The process emphasizes documentation. ApplePie Capital evaluates each borrower's income, liquidity, business experience, franchise experience, and existing business relationships. It also reviews personal financing statements, identification documents, liquidity records, and, for startup borrowers' cash-flow and budget projections. When questions arise, Ms. Maystrovich requests additional documentation to verify the information. The Court finds this process reasonable given ApplePie Capital size and business model.

The Court found both Ms. Maystrovitch's and Mr. Kilpatrick's testimony credible and reliable. The Court also found that ApplePie Capital's reliance on the Bookers' representations and the alleged authenticity of the documents they delivered was reasonable.

Based on the accuracy, validity, and authenticity of the Booker's representations and documents provided to ApplePie Capital during the loan application process, ApplePie Capital approved and funded the Nahla Loan. The credible evidence further established that the Bookers never actually operated the Nahla Bonchon restaurant, Nahla has not repaid the Nahla Loan, and the Bookers have not paid their Personal Guaranty obligation to ApplePie Capital.

**B.      The ZKB Loan**

On October 25, 2024, ApplePie Capital and ZKB entered into a *Loan Agreement*[15] for a $605,000 loan to ZKB (the "***ZKB Loan***") for the acquisition and development of a Bonchon Korean Fried Chicken restaurant located at 2301 E. Broad Street, Building B Suite 201 Mansfield, TX 76063.[16] To induce ApplePie Capital to approve and fund the ZKB Loan, the Bookers made certain material representations to ApplePie Capital and provided ApplePie Capital with documents in support of their loan application including, but not limited to:

- The Bookers each executed and delivered to ApplePie Capital a *Personal Guaranty*[17] whereby they guaranteed the payment and performance obligations of the Loan Agreement and all existing and future indebtedness of ZKB to ApplePie Capital;

- The Bookers represented to ApplePie Capital that the proposed sale transaction of Mr. Booker's 100% interest in Green Haul Logistics with National Freight Logistics LLC and the United States Department of Defense had closed for

---

[15] P. Ex. 13.
[16] *Id*. at pg. 64 of 70.
[17] P. Ex. 14.

approximately $6.2 million[18] and the sale proceeds were on deposit in a Chase bank account owned by Booker & Booker Investments Corporation;[19] and

- the Bookers delivered to ApplePie Capital their Joint Personal Financial Statement[20] dated August 16, 2024, reflecting, in part, the following representations:

| Checking, Cash and Savings Accounts | $587,402.00 |
|---|---|
| Market Securities | $326,250.00 |
| Real Estate | $401,392.00 |
| Business Assets | $600,000.00 |
| Retirement Accounts | $108,382.00 |
| Funds Spent on Financing Request | $250,300.00 |
| Total Assets | $2,273,672.00 |
| Net Worth | $1,969,871.00 |

Again, the credible and uncontroverted testimony of Ms. Maystrovich and Mr. Kilpatrick established that ApplePie Capital reasonably relied on the accuracy of the above representations made by the Bookers and the authenticity of the above documents delivered to ApplePie Capital in support of the ZKB loan application.

Based on the accuracy, validity, and authenticity of the Booker's representations and documents provided to ApplePie Capital during the loan application process, ApplePie Capital approved and funded the ZKB Loan. The credible evidence further established that the Bookers

---

[18] P. Ex. 11.
[19] P. Exs. 12, 26.
[20] P. Ex. 10.

never actually opened or operated the ZKB Bonchon restaurant, ZKB has not repaid the ZKB Loan, and the Bookers have not paid their Personal Guaranty obligation to ApplePie Capital.

**C.      The Bookers' Representations and Documents Were False and Fraudulent**

The credible evidence established that the Bookers' representations made and documents provided to ApplePie Capital to induce ApplePie Capital to approve and fund the Nahla Loan and the ZKB Loan were materially false and constituted false pretenses, false representations, and actual fraud.

The Bookers had represented that the Green Haul Logistics business was a valuable business owned by Mr. Booker and it was paying Mr. Booker a monthly salary of approximately $28,000 per month in 2023 and 2024. In support of these representations, the Bookers provided ApplePie Capital the alleged W-2[21] and pay-stub[22] documents. But the Bookers' representations were false, and the alleged W-2 and pay-stub documents were fraudulent. In their above-captioned bankruptcy case, the Bookers signed (under penalty of perjury) and filed their *Statement of Financial Affairs*[23] which confirmed that Mr. Booker had no income in 2023 and 2024.[24]

Next, the Bookers represented during the Nahla Loan application process that Green Haul Logistics was in the process of being sold.[25] Then during the ZKB Loan application process, the Bookers represented that the sale transaction for the Green Haul Logistics business had closed and funded and that the $6,250,000 sale proceeds were deposited into a Chase bank account. The Bookers then delivered to ApplePie Capital the alleged Chase bank statement that reflected a

---

[21] P. Ex. 1.
[22] P. Ex. 9.
[23] P. Ex. 15.
[24] *Id*. at pg. 68 of 101.
[25] P. Ex. 2, 3.

$6,250,060.00 bank balance.[26] That bank statement, however, was fraudulent and forged.[27] The actual bank balance was $60.00,[28] as evidenced by the actual Chase bank statement provided to ApplePie Capital during discovery in this Adversary Proceeding.

Mr. Booker's testimony attempting to explain away the Booker's clear and obvious false and fraudulent representations and forged documents about Green Haul Logistics was absurd and not believable. For example, during his testimony, Mr. Booker could not answer questions about basic information concerning Green Haul Logistics. He also testified that the alleged Green Haul Logistics sale transaction was a "projection" rather than a complete transaction. Further, in response to questions about the false and forged Chase bank statement, Mr. Booker testified that he did not provide the forged bank statement to ApplePie Capital, rather, it must have been provided by "someone from his team" and that ApplePie Capital should not have relied upon such obviously forged bank statement in any event.

The credible evidence further established that the joint personal financial statements dated April 23, 2024, and August 16, 2024, provided by the Bookers to ApplePie Capital were materially false. In their above-captioned bankruptcy case, the Bookers signed (under penalty of perjury) and filed their *Schedules*[29] which reflected, in pertinent part:

| Real Estate | $308,986.00 |
|---|---|
| Vehicles | $84,640.00 |
| Personal and Household Items | $6,665.00 |
| Financial Assets | $94,000.00 |

---

[26] P. Exs. 12, 26.

[27] Although there was no direct evidence on who created the fraudulent and forged bank statement, the evidence indicated that Mrs. Booker is a software engineer.

[28] P. Ex. 27.

[29] ECF No. 1.

| | |
|---|---|
| **Business Related Property** | $600.00 |
| **Total Assets** | $494,899.80 |

The Bookers' Schedules reflect a reduction of $1,474,971.20 in alleged assets from the joint personal financial statements they had provided to ApplePie Capital. The Bookers failed to provide credible evidence to explain the substantial reductions in cash, marketable securities, and other assets they allegedly had at the time they submitted their loan applications with ApplePie Capital.

The credible evidence established that (i) the Bookers made material false pretenses, false representations, and committed actual fraud to induce ApplePie Capital to approve and fund the Nahla Loan and the ZKB Loan; (ii) the Bookers knew their representations were material false pretenses, false representations, and actual fraud at the time they made such representations; (iii) the Bookers made such materially false representations and fraud with the intent to deceive ApplePie Capital; (iv) ApplePie Capital justifiably relied on the Bookers' representations that were materially false pretenses, false representations, and actual fraud; and (v) ApplePie Capital sustained losses exceeding $1,108,638.44[30] as a proximate result of the Bookers' representations that constituted false pretenses, false representations, and actual fraud.

### III.   CONCLUSIONS OF LAW

ApplePie Capital contends the Bookers induced it into funding the $480,000.00 Nahla Loan and the $605,000.00 ZKB Loan through false pretenses, a false representation, and actual fraud under 11 U.S.C. 523 § (a)(2)(A); and that the Bookers inducing ApplePie Capital to fund the Nala Loan and the ZKB Loan based on false financial statements under 11 U.S.C. 523 § (a)(2)(B).

---

[30] P. Exs. 16, 28.

**A.        11 U.S.C. 523 § (a)(2)(A)—False Pretenses, False Representation, or Actual Fraud**

Under § 523(a)(2)(A), the Court may not discharge a debt for money obtained by false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's financial condition.[31] Here, the standard of proof is preponderance of the evidence.[32] While exceptions to discharge are construed in favor of the debtor with idea that the Bankruptcy Code provides a fresh start to debtor, the Code does not create a haven for wrongdoers.[33]

To prove a debt is nondischargeable under § 523(a)(2)(A) the creditor must show (i) the debtor made representations other than a statement concerning his financial condition, (ii) at the time the debtor made the representations he knew they were false, (iii) the debtor made the representations with the intention and purpose to deceive the creditor, (iv) the creditor justifiably relied on such representations, and (v) the creditor sustained losses as a proximate result of the false representations.[34]

Based on the findings of fact detailed above, the Court finds and concludes that ApplePie Capital has established through overwhelming evidence each of the required elements under § 523(a)(2)(A). Consequently, ApplePie Capital has satisfied its burden under § 523(a)(2)(A), therefore, ApplePie Capital's debt owed by the Bookers in the amount of $1,108,638.44[35] is excepted from their discharge.

**B.  False Financial Statement Under 11 U.S.C. 523 § (a)(2)(B)**

ApplePie Capital contends that the Bookers induced it into approving and funding the Nahla Loan and the ZKB Loan with materially false written statements. To prove a debt is

---

[31] 11 U.S.C. § 523(a)(2)(A).

[32] *Grogan v. Garner,* 498 U.S. 279, 286, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991).

[33] *McCoun v. Rea (In re Rea),* 245 B.R. 77, 84-5 (Bankr. N.D. Tex. 2000)(quoting *In re Davis,* 194 F.3d 570 (5th Cir. 1999)).

[34] *In re Metcalf*, No. 05-34150-SGJ-7, 2006 WL 2883284 at *5 (Bankr. N.D. Tex. Oct. 6, 2006)(quoting *Manheim Automotive Fin. Serv., Inc. v. Hurst (In re Hurst),* 337 B.R. 125, 131 (Bankr. N.D. Tex. 2005)).

[35] P. Exs. 16, 28.

nondischargeable under 523 § (a)(2)(B), a plaintiff must show the money was obtained by (i) materially false written statement, (ii) respecting the debtor or insiders' information, and (iii) the debtor caused the writing to be made published with intent to deceive.[36]

Based on the findings of fact detailed above, the Court finds and concludes that ApplePie Capital has established through overwhelming evidence each of the required elements under § 523(a)(2)(B). Consequently, ApplePie Capital has satisfied its burden under § 523(a)(2)(B), therefore, ApplePie Capital's debt owed by the Bookers in the amount of $1,108,638.44[37] is excepted from their discharge.

### IV.    CONCLUSION

ApplePie Capital has established, by a preponderance of the evidence through overwhelming evidence, a nondischargeable claim under §§ 523(a)(2)(A) and (B) in the amount of $1,108,638.44, plus attorneys' fees of $30,877.00.[38]

The Court will enter a separate Judgment consistent with these Findings of Fact and Conclusions of Law.

**### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###**

---

[36] *Matter of Norris,* 70 F.3d 27, 29 (5th Cir.1995).
[37] P. Exs. 16, 28.
[38] P. Exs. 32, 40.